IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

COACHMEN INDUSTRIES, INC., )
)
    Plaintiff, )
)
v. ) CASE NO.
) 3:10C 163
GAMCO ASSET MANAGEMENT, INC., )
)
    Defendant. )
)

## COMPLAINT AND JURY DEMAND

Coachmen Industries, Inc. ("Coachmen" or the "Company"), for its complaint against Defendant GAMCO Asset Management, Inc. ("GAMCO"), alleges as follows:

### INTRODUCTION

1.    This action arises out of GAMCO's improper solicitation of proxies to Coachmen's shareholders to elect three individuals GAMCO purportedly nominated to Coachmen's Board of Directors, when those nominees were ineligible and disqualified from serving as directors under Coachmen's Corporate Governance Guidelines.

### PARTIES, JURISDICTION, AND VENUE

2.    Plaintiff Coachmen is an Indiana corporation and citizen, with its principal place of business in Elkhart, Indiana.

3.    Defendant GAMCO is a New York corporation and citizen.

4.    This action is brought under the Securities Exchange Act of 1934 ("Exchange Act") and Indiana's Declaratory Judgment Act. Coachman seeks injunctive relief and damages.

5. This Court has jurisdiction over Coachmen's federal securities claim pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Coachmen's state law claim pursuant to 28 U.S.C. §§ 1366 and 1367 and under the doctrine of pendant jurisdiction as the state claim is so related to the federal claim as to form part of the same case or controversy.

6. Venue is proper in this district under 28 U.S.C. §1391(b) because the solicitation of proxies and voting on directors occurred in this judicial district.

## FACTS GIVING RISE TO COACHMEN'S CLAIMS

7. Coachmen is a publicly traded company. The Company's business is conducted by its employees, managers, and officers, under the direction of the Chief Executive Officer ("CEO") and the oversight of the Company's Board of Directors (sometimes referred to herein as the "Board").

8. The Board is elected by Coachmen's shareowners. Specifically, "Directors are elected by a plurality of the votes cast by shares entitled to vote in the election at a meeting at which a quorum is present, unless otherwise provided in the Articles of Incorporation of the Corporation." By-Laws of Coachmen Industries, Inc. (as modified through October 27, 2009) (hereafter "By-Laws"), Article II, Section 2.9.

9. Coachmen's annual election of directors will occur at its annual shareholders' meeting, to be held at Christiana Creek Country Club, 116 West Bristol Street, Elkhart, Indiana, on Thursday, April 29, 2010 at 10:00 A.M.

10. In addition to general oversight of management, Coachmen's Board of Directors also performs a number of specific functions, including:

- Ensuring processes are in place for maintaining the integrity of the Company – the integrity of financial statements, the integrity of compliance

with the laws and ethics, and the integrity of relationships with stakeholders;

- Reviewing, approving, and monitoring fundamental financial and business strategies and major corporate actions;

- Assessing major risks facing the Company, and reviewing options for their mitigation;

- Selecting, evaluating, and compensating the CEO, and overseeing CEO succession planning, and where necessary, replacing the CEO;

- Providing counsel and oversight on the selection, evaluation, development, and compensation of other senior executives, defined as members of the Executive Management Committee; and

- Evaluating Board processes and performance, selecting directors, and compensating directors.

11. The Board is divided into three classes. The members of each class serve three-year terms, with one class elected each year by Coachmen's shareholders at the annual meeting.

12. Under Coachmen's By-Laws, certain shareholders may propose nominees for consideration by Coachmen's Governance Committee by submitting nominee names and supporting information in accordance with the Company's By-Laws and instructions provided in the Company's most recent annual proxy statement.

13. The Company's Corporate Governance Guidelines provides:

> Directors must be willing to devote sufficient time to carrying out their duties and responsibilities effectively, and should be committed to serving on the Board for an extended period of time. Directors who also serve as CEOs or in equivalent positions should not serve on more than two boards of public and/or private companies in addition to the Coachmen Board, and other directors should not serve on more than four other boards of public companies in addition to the Coachmen Board. The Governance Committee with review this item on a case-by-case basis.

Coachmen Industries, Inc. Corporate Governance Guidelines, As Adopted and Amended August 20, 2007, Paragraph 5.h.

14. The Company's Corporate Governance Guidelines also provide that "Coachmen does not have term limits for its directors, but does have mandatory retirement...." Corporate Governance Guidelines, Paragraph 5.j. "Directors will not be nominated for election to the Board after their 75th birthday, except pursuant to a unanimous resolution of the Board of Directors authorizing continued service for a limited period of time in special circumstances." Corporate Governance Guidelines, Paragraph 5.k.

15. Section 2.15(a) of the Company's By-Laws requires that any nomination for director by a shareholder of the Company must be made in writing and received by the Company no later than 90 days prior to the anniversary of the date of the last meeting of shareholders for the election of directors.

16. As set forth in the proxy statement for the Company's 2009 annual meeting of shareholders, the deadline for receipt of nominations for the 2010 Annual Meeting was January 30, 2010.

17. Section 2.15(b) of the Company's By-Laws set forth certain information with respect to each nominee for director that must be included in a notice of nomination. That information includes:

- Name of the nominee
- Nominee's age
- Nominee's business address
- Nominee's residence address
- Nominee's principal occupation
- Number of the Company's shares beneficially owned by nominee
- Such other information as is required under procedures adopted for nominations by the company's Governance Committee

- Such other information as is required to be included in a proxy statement soliciting proxies for the election

18. In January 2010, the Company received two separate Notices of Intent to Nominate Directors at the Company's 2010 Annual Meeting of Shareholders from GAMCO.

19. GAMCO is a privately owned investment manager. Mario J. Gabelli ("Gabelli") is the Chairman, Chief Executive Officer, Portfolio Manager, and Chief Investment Officer of value portfolios of GAMCO.

20. As of the Company's March 15, 2010 record date, GAMCO beneficially owned 909,219 shares of Coachmen's stock, representing 5.62% of the Company's outstanding shares. In addition, GAMCO'S affiliates beneficially owned 788,500 shares of Coachmen's 16,189,322 common shares outstanding or 4.87% of Coachmen's outstanding shares.

21. GAMCO amended its Schedule 13D filing relating to the Company on January 28, 2010 and January 29, 2010 to disclose that it sent letters to the Company announcing its intention to recommend up to three individuals for nomination for election as directors of the Company at the annual meeting, including Glenn J. Angiolillo ("Angiolillo"), Avrum Gray ("Gray"), and Robert S. Prather ("Prather").

22. On April 8, 2010, GAMCO filed a preliminary proxy statement in connection with the Coachmen 2010 Annual Meeting of Shareholders to elect its three nominees (Angiolillo, Gray, and Prather) as directors of Coachmen.

23. On or about April 16, 2010, GAMCO filed a definitive proxy statement with the Securities and Exchange Commission in connection with the solicitation of the

Company's shareholders to vote for GAMCO's purported nominees at the annual meeting.

24. After receipt of the notices for nomination, the Company's Board of Directors determined that the notices of nomination did not provide the following required information with respect to the purported nominees:

- A discussion, required to be included in a proxy statement, of the specific experience, qualifications, attributes or skills that would lead to a conclusion that the nominee should serve as a director of the Company, in light of the Company's business;

- A statement, required to be included in a proxy statement, of any legal proceedings that occurred during the past ten years that any of the nominees have been involved in and that would be material to an evaluation of the nominee's ability or integrity; and

- Both a business and residence address.

25. Because the notices of nomination were not amended or supplemented to provide the required information prior to the January 30, 2010 deadline for nominations, the Board of Directors determined that the purported nominations did not comply with the Company's By-Laws.

26. Upon the report of Director Robert J. Deputy, Chairman of the Governance Committee, to the full Board of Directors, the Board noted unanimous concern with the ability of the purported nominees to meet the time demands associated with being a contributing member to the Board given their numerous, significant time commitments. Specifically, the Board determined that the purported nominees' professional commitments did not satisfy the Company's Corporate Governance Guidelines. Accordingly, the Board did not recommend including any of the purported

nominees on the Company's slate of directors for nomination at the Company's 2010 Annual Meeting.

27.     Specifically, the Company's Governance Guidelines contain certain eligibility requirements for directors including, but not limited to, that a director nominee who is the chief executive officer of a public company can not be a director of more than two other public companies, and no director nominee can be the director of four or more other public companies.

28.     GAMCO's Proxy Statement disclosed that Angiolillo is President of GJA Corporation, a consulting and advisory firm specializing in wealth management; a former partner in the law firm of Cummings & Lockwood; and is a director or board member for: (1) LICT Corp. (formerly known as Lynch Interactive Corp. (public company); (2) NYMagic, Inc (public company); (3) Trans-Lux Corporation (public company); and (4) Gaylord Entertainment Company (public company).  GAMCO Proxy Statement, Proposal 1: Election of Directors, Background of the GAMCO Nominees.

29.     GAMCO's Proxy Statement disclosed that Gray, age 74 and thus only able to serve for one term under the Company's Corporate Governance Guidelines, is the Chairman and Founding Partner of G-Bar Limited Partnership, one of the nation's largest independent options trading firms and a leading specialist in computer-based arbitrage activities in the derivatives markets, and that he was a director or board member for: (1) Nashua Corporation (public company); (2) Material Sciences Corporation (public company); and (3) The LGL Group, Inc. (pubic company); and (4) SL Industries, Inc. (public company).  GAMCO Proxy Statement, Proposal 1: Election of Directors, Background of the GAMCO Nominees.

30. GAMCO's Proxy Statement disclosed that Prather is the President and Chief Operating Officer of Gray Television, Inc., a television broadcast company in Atlanta, Georgia, and that he is a director or member for the following boards: (1) Gray Television, Inc. (public company); (2) Triple Crown Media, Inc. (Chairman, public company); (3) The Georgia World Congress Center Authority (Chairman of government authority); (4) Draper Holdings Business Trust (privately held); (5) Enterprise Bank (privately held); (6) Gaylord Entertainment Company (public company); (7) GAMCO Investors, Inc. (privately held parent corporation of GAMCO); and (8) Swiss Army Brands, Inc. (privately held). GAMCO Proxy Statement, Proposal 1: Election of Directors, Background of the GAMCO Nominees. Additionally, upon information and belief, Prather is a director or board member of Nioxin Research Laboratories, Inc. (privately held) and Greenwich PMV Acquisition Corp. (privately held).

31. Following the Board Meeting, Chairman of the Board, William Johnson, attempted to communicate with Mr. Gabelli to inform him that the nominations were out of order and to also explore opportunities to address his concerns. After several attempts to engage Mr. Gabelli in discussions, the Company received no further communications from GAMCO regarding the Company until the filing of GAMCO's proxy statement with the Securities and Exchange Commission on March 8, 2010.

32. In its proxy statement, GAMCO indicated that it intends to solicit proxies from the Company's shareholders for the election of its proposed nominees.

33. Because the Board of Directors has determined that the purported nominations did not comply with the Company's By-Laws, the purported nominations of Angiolillo, Gray, and Prather are out of order and votes for them may be disallowed.

## CAUSES OF ACTION

### Count I Violation of Securities Exchange Act of 1934

34. Coachmen incorporates by reference the allegations in Paragraphs 1 through 33 by reference as if set forth fully herein.

35. Section 14(a) of the Exchange Act prohibits a solicitation "by means of a proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading." SEC Rule 14a-9(a); 17 C.F.R. § 240.14a-9; and Exchange Act, § 14(a), 15 U.S.C. § 78n(a).

36. An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote. It does not require proof of a substantial likelihood that disclosure of the omitted fact would have caused the reasonable investor to change his vote, but just that it would have assumed actual significance in the deliberations of a reasonable shareholder, meaning it would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.

37. Reliance is not an element of proof in misleading proxy claims. Because materiality is the touchstone of a proxy violation case, whether any particular shareholder was actually misled by the challenged misrepresentation is irrelevant.

38. GAMCO's proxy solicitation violated Section 2.15 of Coachmen's By-Laws by failing to include certain information about the proposed nominees, including but not limited to, the specific experience, qualifications, attributes or skills that would lead to a conclusion that the nominee should serve as a director of the Company, in light of the Company's business; a statement, required to be included in a proxy statement, of any legal proceedings that occurred during the past ten years that any of the nominees have been involved in and that would be material to an evaluation of the nominees' ability or integrity; both a business and residence address; and that Gray could only serve for one term.

39. GAMCO's proxy solicitation failed to explain that the purported nominees' positions as board members or directors for other public and private companies, which would dilute the purported nominees' ability to give their attention and effort to Coachmen's Board and attendant responsibilities, are not in compliance with Coachmen's Corporate Governance Guidelines.

40. GAMCO failed to disclose the Company's position, disclosed in the Company's proxy statement, that the purported nominees are not eligible to serve as Coachmen directors under the Company's Corporate Governance Guidelines, that GAMCO's nomination did not comply with the Company's By-Laws and are therefore out of order, and that Coachmen may not count any shareholder votes for said nominees.

41. Coachmen has been harmed by GAMCO's improper proxy solicitation in violation of Section 14(a) of the Exchange Act and is entitled to injunctive relief and damages.

## Count II – Declaratory Judgment

42. Coachmen incorporates by reference the allegations in Paragraphs 1 through 41 by reference as if set forth fully herein.

43. Coachmen's By-Laws and Corporate Governance Guidelines establish certain eligibility requirements for its directors.

44. GAMCO's proxy solicitation to elect its nominees as directors was out of order because the directors failed to meet the eligibility requirements set forth in the By-Laws and Corporate Governance Guidelines.

45. Because GAMCO's nominees were ineligible to serve as Coachmen directors, Coachmen had the right and authority to refuse to recognize or accept any votes, in person or by proxy, for GAMCO's nominees.

46. Coachmen seeks to have this Court declare Coachmen's rights and authority to declare GAMCO's proxy solicitation out of order and to refuse to recognize or accept votes for GAMCO's nominees under Coachmen's By-Laws and Corporate Governance Guidelines pursuant to Ind. Code § 34-14-1-1 and I.C. § 34-14-1-2.

47. Coachmen has a substantial present interest in its By-Laws and Corporate Governance Guidelines and its rights are affected by the validity of said document.

48. A real and actually controversy exists between Coachmen and GAMCO about the construction and effect of the By-Laws and Corporate Governance Guidelines.

49. Questions have arisen affecting Coachmen's rights to have directors elected who meet its By-Laws and Corporate Governance Guidelines. Specifically, those questions include whether GAMCO's nominees who have numerous outside

board memberships and other responsibilities must meet Coachmen's Corporate Governance Guidelines to be eligible to be elected as directors.

## PRAYER FOR RELIEF

50.     WHEREFORE, with respect to Count I, Coachmen requests that this Court award it injunctive relief and other damages as a result of GAMCO's violation of the Securities Exchange Act of 1934.

51.     WHEREFORE, with respect to Count II, Coachmen requests that this Court enter a declaratory judgment in Coachmen's favor and against GAMCO, and declare that Coachmen's determination to rule GAMCO's purported nominees were out of order and all votes cast by shareholders in favor of said nominees were null and void because the purported nominations failed to comply with Coachmen's By-Laws and Corporate Governance Guidelines.

52.     WHEREFORE, as to all Counts, Coachmen requests all other relief as the case may require or as the Court may determine to be just, equitable, and proper.

## JURY DEMAND

Coachmen demands trial by jury as to all issues triable to a jury.

Respectfully submitted,

*[signature]*

Thomas A. Barnard, Attorney No. 4011-49
William C. Wagner, Attorney No. 16542-64
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, Indiana 46204
Telephone: 317.713.3500
Facsimile:  317.713.3699
Email: tbarnard@taftlaw.com
       wwagner@taftlaw.com